LEVY, Judge.
In 1996, Firestone Publishing, Inc. (“Firestone”) entered into an Asset Purchase and Sale Agreement (“Purchase Agreement”) with Dugent Publishing Corporation (“Dugent”) worth $7 million. Pursuant to the Purchase Agreement, Du-gent conveyed substantially all of its assets to Firestone. Firestone paid Dugent $3.5 million in cash, gave Dugent a security interest in the property conveyed, and en *1277 tered into a five-year employment agreement with Walter Weidenbaum (‘Weidenb-aum”), an officer and director of Dugent, whereby Weidenbaum became the President of Firestone.
As part of the Purchase Agreement, Firestone and Dugent executed a number of documents, including a Promissory Note and a Security Agreement which, in part, provide: “An Event of Default shall be deemed to have occurred hereunder upon a failure by [Firestone] to cause or make any payment when due which continues unremedied for ten (10) days after written notice from [Dugent] given in the manner specified for notice in an Asset Purchase Agreement between [Dugent] and [Firestone].” Section 5 of the Security Agreement includes a Remedies section which provides that in the event of default as defined in the Note, Dugent may
(a) (i) Personally, or by agents or attorneys, immediately take possession of the Pledged Collateral or any part thereof, from Debtor or any other person who then has possession of any part thereof with or without notice or process of law, and for that purpose may enter upon [Firestone’s] premises where any of the Pledged Collateral is located and remove such Pledged Collateral and use in connection with such removal any and all service, supplies, aids and other facilities of [Firestone]; [Firestone] hereby covenants and agrees that it shall allow such actions by [Dugent] without causing a breach of the peace.
Moreover, this section grants Dugent the right to dispose of the Pledged Collateral in any manner with the exception that, if Dugent is required by law to give notice, it must give Firestone 10 days notice of the time and place of any public sale or of the time after which a private sale or other intended disposition is to take place. Additionally, the rights extended in the Agreement include “all the rights and remedies of a secured party under the Uniform Commercial Code.”
In mid-1998, Firestone began experiencing financial difficulties and sought extensions for past due payments to Dugent. Extensions were given through October 15, 1998, at which time Dugent mailed a Default Notice to Firestone giving Firestone ten days to cure the default. On Monday, October 26, 1998, Weidenbaum took possession of Firestone’s assets claiming a creditor security interest. Simultaneously, Firestone’s Board of Directors resolved to assign its assets and executed an Assignment for Benefit of Creditors (“the Assignment”) conveying all of its assets to William A. Brandt (“Brandt”) as assignee. Brandt immediately filed the Assignment with the court pursuant to Chapter 727, Florida Statutes, and attempted to take possession of Firestone’s business premises. Weidenbaum refused to relinquish the property on the grounds that Dugent was a creditor in possession prior to the Assignment taking effect and was not required to turnover assets. Brandt filed an Emergency Motion to Compel Turnover of Assets. After an evidentiary hearing on the motion, the trial court denied the motion. Brandt filed a Motion for Rehearing and on January 15, 1999, the trial court denied the motion. On the same day, after notice and publication of the sale, the property was sold at a public sale of assets. This appeal ensues. We affirm based on the authority of Marine Midland Bank-Central v. Cote, 351 So.2d 750 (Fla. 1st DCA 1977).
In Marine Midland, the First District held that “absent a contrary agreement, when a security agreement provides the secured party has on default the rights and remedies provided by the UCC, the right of repossession ... implies, ... a limited privilege to enter on the debtor’s land. The privilege may be exercised only ‘without breach of the peace.’ ” Id. at 752. The Court set forth a two-prong test to determine if a breach of the peace occurred which requires that the trial court determine (1) whether the creditor entered debtor’s premises; and (2) whether -the *1278 debtor, or his agent, consented to the entry and repossession. Id.
In the instant case, there is no question that Dugent, through the acts of Weidenb-aum, entered upon the premises of Firestone. Therefore, the question we must consider is whether Firestone consented to the entry by Weidenbaum for purposes of repossession. We find that when it executed the Security Agreement, giving Du-gent the right to enter the property for purposes of repossession and agreed to “allow such action by Dugent without causing a breach of the peace,” Firestone consented to the entry and repossession of the collateral. Cf. Quest v. Barnett Bank of Pensacola, 397 So.2d 1020 (Fla. 1st DCA 1981). For the foregoing reasons, we affirm the trial court’s Order denying Brandt’s Emergency Motion to Compel Turnover of Assets.
Affirmed.
JORGENSON, J., concurs.